IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VLADIMIR VASILIYEVICH RAKIN,

                Petitioner,                      No. 2:10-cv-0715 LKK AC P

      vs.

M. MARTEL,

                Respondent.               <u>FINDINGS & RECOMMENDATIONS</u>

_____/

          Petitioner is a state prisoner proceeding pro se and in forma pauperis on his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the undersigned recommends that the petition be DENIED and that a certificate of appealability not issue.

**BACKGROUND**

          Petitioner was convicted by jury in 2006 of rape, lewd and lascivious acts with a child, battery, kidnaping, and related charges.  II CT 494-500, 580, 618-21.  In 2007, the trial court sentenced petitioner to a determinate term of 26 years and eight months, plus an indeterminate term of 75 years to life.  III CT 618-21.

          Petitioner was born in Russia in 1957, and emigrated to the United States in 1994.

1

1   III CT 604.  At the time of his trial, petitioner did not speak, read, or write English.  ECF No. 1

2   at 12.  During the fourteen-day trial, four different Russian interpreters translated proceedings

3   for petitioner.  E.g., II CT 373 (interpreter Alex Fesenko); 379 (interpreter Edward Hairullin);

4   416 (interpreters Irena Kravt and Elena Tzukan).

5          On November 5, 2006, the first day of trial proceedings and before a jury was

6   seated, petitioner through his counsel indicated that he may want to represent himself.  I RT 2:4-

7   8:13.  At that time, the trial court specifically advised petitioner that if his motion to represent

8   himself was granted, he would not receive any continuances in order to acquaint himself with the

9   trial materials.  I RT 4:3-9; 7:23-26.  Counsel continued for the petitioner until November 28,

10  2006, when petitioner orally made a Faretta[1] motion to waive his right to counsel.  I RT 128:20-

11  28; 163:3-176:13.  After a colloquy, the trial court provided petitioner with written notice of

12  various advisements.  II CT 403; I RT 166:10-167:6, 170:21-176:13.  The written advisements

13  stated, among other things, that petitioner's "[p]enalties for offense if found guilty are 49 years +

14  45 years to life."  II CT 403.

15          The trial judge told petitioner that he would not rule on petitioner's Faretta

16  motion until the following day, and advised petitioner to review the written warnings with the

17  court's interpreter.  I RT 166:10-167:6.  On November 29, 2006, the trial court determined that

18  petitioner had reviewed the written warnings, and granted the motion.  I RT 175:16-176:13.  The

19  trial court also appointed petitioner's former counsel as advisory counsel.  I RT 176:7-179:28;

20  180:3-22 (court advises petitioner that court has appointed advisory counsel; petitioner responds,

21  "That's a wonderful idea, thank you."); I RT 208:20-209:11.  The court also appointed a Conflict

22  Criminal Defender's Investigator for petitioner.  I CT 402; I RT 209:12-20.

23          On December 5, 2006, after the jury had been selected and seated, the prosecutor

24  made her opening statement, and began direct examination of the state's first witness.  II CT

25

26          [1] Faretta v. California, 422 U.S. 806 (1975).

2

1    418-19.  After petitioner began his cross-examination, he asked the court for a continuance in

2    order to make himself familiar with documents concerning the witness.  2 RT 301:17-303:12.

3    The trial judge denied the request, noting that petitioner had had access to the material for weeks,

4    if not years, and that he had previously advised petitioner that the trial would be moving forward

5    with witnesses beginning that day.  Id.  After the trial judge denied petitioner's request,

6    petitioner continued and concluded his examination of the witness.  2 RT 304:19-305:21.  A

7    review of the transcripts reflects that petitioner did not recall the witness at any later time.

8            On December 13, 2006, the jury returned verdicts convicting petitioner as

9    charged on all counts but one, Count 12 (felony domestic abuse).  II CT 494-500.  As to Count

10   12, petitioner was convicted of the misdemeanor lesser offense of simple battery upon his wife.

11   II CT 498.  The jury found true the multiple victim "One Strike" circumstance as to four of the

12   counts.  II CT 495-97.

13           On February 2, 2007, the trial court sentenced petitioner to a determinate term of

14   twenty six years and eight months, and an indeterminate term of 75 years to life.  III CT 618-21;

15   3 RT 700:17-704:7.  The indeterminate term consisted of five consecutive terms of 15 years to

16   life.  III CT 620-21; 3 RT 700:17-701:16.

17                           **PROCEDURAL HISTORY**

18           Petitioner appealed, claiming among other things that his Faretta waiver was

19   invalid because the trial court had incorrectly advised him about his possible indeterminate term.

20   See Lod. Doc. 1.  The California Court of Appeal initially reversed the convictions on three

21   counts, and affirmed the remainder.  See ECF No. 1 at 32-55.  On October 21, 2008, after

22   rehearing, the Court of Appeal issued a decision striking one count of child abuse, and reversing

23   a conviction for one count of attempted rape.  See Lod. Doc. 10.  The indeterminate portion of

24   petitioner's sentence was accordingly reduced from 75 years to life, to 60 years to life.  See ECF

25   No. 25 at 8-9.

26           The Court of Appeal found petitioner's claim that his Faretta waiver was invalid

                                                3

1  to be without merit, both upon initial consideration and upon rehearing.  <u>See</u> ECF No. 1 at 38-42;

2  Lod. Doc. 10 at 7-11.

3            On January 14, 2009, the state Supreme Court denied review of the Court of

4  Appeal's decision.  Lod. Doc. 12.

5            On March 23, 2010, petitioner constructively filed the current petition, noting that

6  all claims, other than that challenging his <u>Faretta</u> waiver, were not exhausted.  ECF No. 1 at 5.

7  Petitioner also sought a stay in order to exhaust his issues before the state court.  ECF No. 1 at 5,

8  21-22.  On November 16, 2010, the court granted petitioner a stay while he completed

9  exhaustion of his state court remedies.  ECF No. 12.

10           On December 20, 2010, petitioner filed a petition for writ of habeas corpus with

11  the state Supreme Court, raising the following issues: (1) petitioner's Sixth and Fourteenth

12  Amendment rights were violated because he did not knowingly and intelligently waive his right

13  to counsel before his <u>Faretta</u> motion was granted; (2) petitioner's due process and fundamental

14  fairness rights were violated when the trial court denied his request for a continuance; (3)

15  petitioner received ineffective assistance of his trial counsel, his appellate counsel, and his trial

16  translator; and (4) petitioner's conviction constitutes a "miscarriage of justice" and a "manifest

17  injustice."  Lod. Doc. 13.

18           On June 15, 2011, the state Supreme Court denied the exhaustion petition in an

19  unexplained "postcard denial" order.  Lod. Doc. 15.

20           On July 25, 2011, this court ordered that the stay be lifted and the petition served.

21  ECF No. 17.  On November 10, 2010, respondent filed his answer (ECF No. 25), and on January

22  11, 2012, petitioner filed his traverse (ECF No. 30).

23           **PETITIONER'S CLAIMS**

24           Petitioner now raises the following claims:

25           (1) The trial court violated petitioner's Sixth and Fourteenth Amendment rights

26  when it granted his <u>Faretta</u> motion, because petitioner did not make a knowing and intelligent

4

1  waiver (ECF No. 1 at 13-16);

2  (2) The trial court violated petitioner's constitutional rights to due process and

3  "fundamental fairness" when it denied petitioner's request for a continuance after granting

4  petitioner's <u>Faretta</u> motion (ECF No. 1 at 16-18);

5  (3) Petitioner's Sixth Amendment rights were violated when he received

6  ineffective assistance of his trial counsel, his appellate counsel, and his trial translators (ECF No.

7  1 at 18-20); and

8  (4) "Petitioner's conviction constitutes a 'miscarriage of justice' and 'manifest

9  injustice'" (ECF No. 1 at 20-21).

10  In his introduction, petitioner claims that he is "actually and factually innocent"

11  of the charged crimes, and that his convictions "stem from a long running domestic dispute,

12  stemming from 'bad-blood' between Petitioner and the victims." ECF No. 1 at 12. However,

13  petitioner does not provide any further information or argument in support of his assertion that

14  he is actually innocent of the crimes for which he was convicted. Accordingly, the undersigned

15  does not construe the innocence rhetoric in the introduction to the petition as stating a free-

16  standing claim for relief.

17  Respondent does not dispute that the petition is timely, and concedes that

18  petitioner has exhausted his state remedies. <u>See</u> ECF No. 25.

19  **STANDARDS GOVERNING THE AVAILABILITY OF HABEAS RELIEF**

20  **A.**   **Applicable Statutory Provisions**

21  28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

22  1996 ("AEDPA"), provides in relevant part as follows:

23  (d) An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a state court shall not be

24  granted with respect to any claim that was adjudicated on the
merits in State court proceedings unless the adjudication of the

25  claim –

26  (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United
States; or
(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented
in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." (Terry) Williams v. Taylor, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

### 1.    "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360

1    F.3d 1044, 1057 (9th Cir. 2004).

2
3            **2.**     **"Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law**

4        Section 2254(d)(1) applies to state court adjudications based on purely legal

5    rulings and mixed questions of law and fact.  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir.

6    2003).  The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on

7    relief.  Williams, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of

8    (d)(1) must be given independent effect, and create two categories of cases in which habeas

9    relief remains available).

10        A state court decision is "contrary to" clearly established federal law if the

11    decision "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams, 529

12    U.S. at 405.  This includes use of the wrong legal rule or analytical framework.  "The addition,

13    deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a

14    failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA."

15    Benn v. Lambert, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).  A state court also acts contrary to

16    clearly established federal law when it reaches a different result from a Supreme Court case

17    despite materially indistinguishable facts.  Williams, 529 U.S. at 406, 412-13; Ramdass v.

18    Angelone, 530 U.S. 156, 165-66 (2000) (plurality op'n).

19        A state court decision "unreasonably applies" federal law "if the state court

20    identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the

21    facts of the particular state prisoner's case."  Williams, 529 U.S. at 407-08.  It is not enough that

22    the state court was incorrect in the view of the federal habeas court; the state court decision must

23    be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).  This does not

24    mean, however, that the § (d)(1) exception is limited to applications of federal law that

25    "reasonable jurists would all agree is unreasonable."  Williams, 529 U.S. at 409 (rejecting Fourth

26    Circuit's overly restrictive interpretation of "unreasonable application" clause).  State court

decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error.  See, e.g., Williams, 529 U.S. at 397-98; Wiggins, 539 U.S. at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909 (2005); Porter v. McCollum, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced.  Lockyer, 538 U.S. at 76.  AEDPA does not require a nearly identical fact pattern before a legal rule must be applied.  Panetti v. Quarterman, 551 U.S. 930, 953 (2007).  Even a general standard may be applied in an unreasonable manner.  Id.  In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim.  Id. at 948.

Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz, 533 F.3d at 738 (emphasis in original).  A different rule applies where the state court rejects claims summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at 786.

Evidence presented for the first time in federal court is not pertinent to the § 2254(d)(1) analysis.  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it.  Id.

### 3.    "Unreasonable Determination Of The Facts"

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination.  Section 2254(d)(2).  The

statute explicitly limits this inquiry to the evidence that was before the state court.

A state court factual conclusion can be unreasonable if it is not fairly supported by the evidence presented in the state proceeding.  See, e.g., Wiggins, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); Bradley v. Duncan, 315 F.3d 1091, 1096-98 (9th Cir. 2002)  (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), cert. denied, 540 U.S. 963 (2003).  Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2).  See Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (ordering relief where state court made unreasonable finding that the prosecutor's asserted race-neutral reasons for striking African-American jurors were true).  An unreasonable determination of fact can also exists where the state court made its findings according to a flawed process -- for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it.  See Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).

### CLAIM ONE: Violation of Sixth and Fourteenth Amendments

Petitioner alleges that his conviction violates the Sixth and Fourteenth Amendments because his Faretta waiver was invalid and unknowing.  See ECF No. 1 at 13-16. He argues that the waiver was defective because: (1) he was inaccurately advised about the length of his indeterminate sentence; (2) he does not speak, read, or understand English; (3) he was provided with different translators during the trial, each of whom had no legal knowledge; and (4) he was not provided with standby counsel.  Id.

***The Inaccurate Advisement***

*Background*

Petitioner alleges that the circumstances surrounding his decision to represent

9

1  himself render his waiver unknowing and involuntary because the trial court incorrectly advised

2  him of his potential maximum sentence.  Petitioner argues that he was advised by the trial court

3  that his potential indeterminate sentence was 45 years to life, rather than the 75 years to life to

4  which he was eventually sentenced.  See ECF No. 1 at 13; see also II CT 403 (written Faretta

5  warnings signed by petitioner on November 29, 2006 reads that "Penalties for offense if found

6  guilty are 49 years + 45 years to life.")

7          The state Court of Appeal, in its amended opinion filed October 21, 2008, found

8  that petitioner's Faretta waiver was valid notwithstanding the allegedly inaccurate advisement.

9  See Lod. Doc. No. 10 at 8.

> [Petitioner's] focus on the *Faretta* form's advisement of the
> indeterminate term of 45 years to life versus the court's imposition
> of an indeterminate sentence of 75 years to life is too narrow.  On
> appeal, we consider whether the record *as a whole* demonstrates
> that [petitioner] understood the disadvantages of self-
> representation.  (*Lawley*, *supra*, 27 Cal.4th at p. 140.)  The court in
> this case provided defendant with a written and lengthy oral
> explanation of the difficulties he faced in representing himself.
> The court gave defendant time to review the form with a Russian
> interpreter after the hearing, and postponed its decision on the
> *Faretta* motion until the following morning.  Defendant asked the
> court several question about the rules of evidence and criminal
> procedure, but had no questions about his potential sentence.  In
> the circumstances of this case, including defendant's age of 49
> years at the time of sentencing, it is reasonable to infer that the
> potential indeterminate sentence was likely among defendant's
> lesser concerns at the time he signed the *Faretta* waiver.  Although
> the difference between 45 years to life and 75 years to life is 30
> years, that difference would have been merely academic to a 49-
> year-old man properly advised of a potential *determinate* sentence
> of 49 years and the fact that the potential punishment included
> incarceration for "life."

22  Lodged Doc. 10 at 10-11.

23          *Governing Authority*

24          This court's review under 28 U.S.C. § 2254(d) focuses on the last reasoned state

25  court state court decision.  Collins v. Runnels, 603 F.3d 1127, 1130 (9th Cir. 2010); see also Ylst

26  v. Nunnemaker, 501 U.S. 797, 806 (1991).  Because the California Court of Appeal considered

1    and denied petitioner's claim that his waiver was involuntary and unknowing, this court

2    considers only whether that court's decision was: (1) contrary to, or an unreasonable application

3    of, clearly established federal law; or (2) based on an unreasonable determination of the facts.

4    The "clearly established federal law" regarding the waiver of counsel is articulated in two United

5    States Supreme Court decisions.

6             A person brought to trial in any state or federal court must be afforded the right to

7    the assistance of counsel.  Faretta, 422 U.S. at 807.  The Sixth Amendment includes the converse

8    guarantee that a criminal defendant has the right to proceed without counsel when he voluntarily

9    and intelligently elects to do so.  See id.  The two rights are mutually exclusive: the Constitution

10   does not allow the government to thrust counsel upon the accused, against the accused's

11   considered wish, in contravention of the nearly universal conviction that forcing a lawyer upon

12   an unwilling defendant is contrary to the defendant's basic right to defend him- or herself if he or

13   she truly wants to do so.  Id. at 817, 820.

14            Because a defendant who exercises the right to self-representation foregoes the

15   benefits of exercising the right to counsel, the accused must knowingly and intelligently

16   relinquish those benefits.  Id. at 835.  When a defendant elects to waive the right to be

17   represented by trial counsel, warnings of the pitfalls of proceeding to trial without counsel must

18   be rigorously conveyed.  Iowa v. Tovar, 541 U.S. 77, 89 (2004).

19            Although a defendant need not himself have the skill and experience of a lawyer

20   in order competently and intelligently to choose self-representation, the defendant should be

21   made aware of the dangers and disadvantages of self-representation.  Faretta, 422 U.S. at 835.

22   However, the Supreme Court "has expressly declined to prescribe any formula or script to be

23   read to a defendant who states that he elects to proceed without counsel."  Tovar, 541 U.S. at 88.

24   Rather, the information a defendant must possess in order to make an intelligent election will

25   depend on a range of case-specific factors, including the defendant's education or sophistication,

26   the complex or easily grasped nature of the charge, and the stage of the proceeding.  Id. at 88, 92

11

1     (quoting U.S. v. Ruiz, 536 U.S. 622, 629 (2002)).

2         *Analysis*

3         In this case, the state Court of Appeal did not unreasonably apply clearly

4 established federal law or otherwise unreasonably determine that petitioner failed to establish an

5 invalid waiver of counsel.  Clearly established federal law requires a reviewing court to

6 determine if the trial court's warnings gave the waiving defendant a full understanding of "the

7 nature of the right and how it would likely apply *in general* in the circumstances – even though

8 the defendant may not know the *specific detailed* consequences of his invoking it."  See Ruiz,

9 536 U.S. at 629.  The appellate court did just that, taking into account that petitioner was 49

10 years old when he was advised that he faced penalties including a determinate term of up to 49

11 years, plus a consecutive term of 45 years to life.  See Lod. Doc. 10 at 10-11; I RT 164:20-165:4.

12

13         The state court of appeal reasonably interpreted the trial record, which includes a

14 lengthy colloquy during which the trial court advised petitioner: (1) that he faced a determinate

15 term of forty-nine years; and (2) that he faced a potentially life-long indeterminate term after

16 completing his determinate forty-nine year sentence.  See II CT 403.  There is nothing in this

17 record to suggest that the trial court affirmatively misled the petitioner.  In short, petitioner was

18 aware at the time he made his Faretta motion that he faced spending the rest of his life in prison.

19 The advisement was sufficient to inform him that the indeterminate life portion of his potential

20 sentence, whatever its minimum duration, might not even begin to run until he was 98 years old.

21 How that sentence would be structured is a "specific detailed consequence" of which the trial

22 court had no duty to ensure that petitioner was precisely aware.  See Ruiz, 536 U.S. at 629.  Even

23 if the trial court erred in stating the minimum term applicable to the indeterminate life sentence,

24 it was not objectively unreasonable of the state appellate court to conclude that petitioner was

25 sufficiently aware of the stakes to execute a valid Faretta waiver.  Neither Faretta nor Tovar

26 requires more from a trial court than was done here.  Accordingly, 28 U.S.C. § 2254(d) bars

1  relief on this claim.

2  ***Language-Related Claims***

3  *Background*

4   Petitioner argues that his Fourteenth Amendment rights were violated when he

5  was permitted to represent himself, because he could not read, write, or speak English and

6  therefore "lacked the capacity to comprehend or understand the rights he was waiving, along

7  with the fact that he lacked the ability to communicate coherently, even with the aid of an

8  interpreter. . . ." ECF No. 1 at 14. Petitioner also seems to argue that his <u>Faretta</u> motion should

9  have been denied under state law, or that he should have been granted advisory counsel, because

10  he lacked the ability to communicate effectively even with an interpreter.

11   Petitioner suggests that he was unable to communicate because he had different

12  translators throughout the trial. He argues that having different translators denied him "a

13  cohesion of the entire trial" because the interpreters "could only interpret on the days [sic]

14  proceedings they witnessed, and could not offer translations based on a continued presence."

15  Petitioner claims that "the effect and prejudice or having multiple interpreters. . . . cannot be

16  overstated. . . ." and that in this case, the disadvantage was compounded because the interpreters

17  had no legal knowledge and were not attorneys. ECF No. 1 at 14, n.2. Petitioner further alleges

18  that "[n]one of the three was able to adequately translate the testimony, legal arguments and

19  concepts, jury instructions, etc." ECF No. 1 at 14.

20  *Governing Authority*

21   Petitioner's language-based claims (and all remaining claims) were exhausted in

22  his state habeas petition, which was denied by the California Supreme Court without a reasoned

23  decision. Under California law, such a disposition indicates that the court assumed the truth of

24  all factual allegations asserted in support of the claim and nonetheless concluded that those facts

25  did not state a claim entitling petitioner to relief. <u>People v. Duvall</u>, 9 Cal. 4th 464, 474 (1995);

26  <u>People v. Romero</u>, 8 Cal. 4th 728, 737 (1994). This court therefore reviews whether the state

13

1  court's determination that petitioner failed to state a prima facie case is reasonable under §

2  2254(d).  Nunes v. Mueller, 350 F.3d 1045, 1054-55 (9th Cir. 2003), cert. denied, 543 U.S. 1038

3  (2004).

4           Petitioner does not cite, nor has this court identified, any federal authority which

5  mandates that a criminal defendant be provided with the same translator throughout his or her

6  trial, or with a translator who has legal knowledge akin to that of an attorney.  Indeed, according

7  to the Court of Appeals for the Ninth Circuit, the United States Supreme Court has not yet

8  recognized a constitutional right to a court-appointed interpreter.  United States v. Si, 333 F.3d

9  1041, 1043 n.3 (9th Cir. 2003) (direct appeal of federal criminal conviction).  Respondent "does

10  not dispute that nearly self-evident proposition that an indigent defendant who could speak and

11  understand no English would have the right to have his trial proceedings translated so as to

12  permit him to participate effectively in his own defense."  ECF No. 23 at 18, citing United States

13  ex rel. Negron v. New York, 434 F.2d 386, 389 (2d Cir. 1970).  The undersigned readily accepts

14  this proposition.  The scope of this right to interpretive services, however, is limited.

15           The United States Supreme Court has held that the refusal to appoint an

16  interpreter is "a matter largely resting in the discretion of the trial court."  Perovich v. United

17  States, 205 U.S. 86, 91 (1907); see also Si, 333 F.3d at 1043, n. 3; United States v. Shin, 953

18  F.2d 559, 561 (9th Cir. 1992) ("As a constitutional matter, the appointment of interpreters is

19  within the district court's discretion."); United States v. Martinez, 616 F.2d 185, 188 (5th Cir.

20  1980), cert. denied, 450 U.S. 994 (1981) ("The use of courtroom interpreters involves a

21  balancing of the defendant's constitutional rights to confrontation and due process against the

22  public's interest in the economical administration of criminal law. . . .That balancing is

23  committed to the sound discretion of the trial judge, reversible only on a showing of abuse.").

24           In other words, the right to an interpreter does not appear to enjoy independent

25  constitutional stature.  Instead, it derives from and exists to the extent necessary to protect a

26  criminal defendant's rights to confront witnesses,  participate meaningfully in his or her own

defense, be assisted by counsel, etc.  Accordingly, a criminal defendant denied a translator can present colorable claims under the Sixth or Fourteenth Amendments if, for example, the defendant had been unable to communicate with his counsel or to understand the proceedings. See, e.g., Chacon v. Wood, 36 F.3d 1459 (9th Cir. 1994) (petitioner stated colorable Sixth Amendment ineffective assistance of counsel claim where interpreter misled defendant, impairing communication between attorney and defendant).  No federal authority establishes a right to relief for inadequate translation services without demonstrated impairment of a specific trial right.

*Analysis*

Petitioner alleges that his ability to represent himself was hampered by the trial court's failure to give him a single interpreter with legal knowledge, and/or advisory counsel, in violation of his Sixth and Fourteenth Amendment rights.  The California Supreme Court's summary rejection of this claim was not unreasonable, because petitioner has no clearly established constitutional right to his "choice" of interpreters.[2]  Petitioner fails to identify any critical stage of the proceeding at which he did not have an interpreter.  Petitioner cites no mistake or error by any interpreter, either inadvertent or intentional, and identifies no specific instance when he was unable to question a witness, to understand the proceedings, or to communicate with the court or with counsel.  Cf., e.g., I RT 163:20-22 (petitioner had equivalent of three years college in Russia); I RT 164:5-8 (petitioner had received training in Russian jurisprudence while serving in Russian army); I RT 170:21-176:1 (colloquy between trial court and petitioner regarding waiver ends by petitioner telling trial court, "I accept your challenge."). A fairminded jurist could reasonably conclude on the basis of the trial record that petitioner was able to proceed with the Russian interpreters who were provided throughout the trial proceedings, and demonstrated an ability to communicate effectively.

---

[2]     Even the right to choice of counsel is limited to those defendants who can retain counsel.  Shell v. Witek, 218 F.3d 1017, 1025-26 (9th Cir. 2000) (en banc).

1    　　　　The California Supreme Court also reasonably rejected petitioner's claim that he

2    was denied due process because he was not appointed advisory counsel.  The trial record reflects

3    that petitioner was appointed advisory counsel.  See I RT 176-180.

4    　　　　Finally, to the extent petitioner relies on state law for his claims regarding Faretta

5    waiver or the interpreters (see ECF No. 1 at 15), petitioner fails to allege facts that would entitle

6    him to relief in this court.  Alleged errors in the application of state law are not cognizable in

7    federal habeas corpus.  See, e.g., Wilson v. Corcoran, _ U.S. _, 131 S.Ct. 13, 16 (2010); Estelle

8    v. McGuire, 502 U.S. 62, 67-68 (1991).

9    　　　　**CLAIM TWO: Denial of Petitioner's Request for a Continuance**

10   　　　　*Background*

11   　　　　On December 5, 2006, after the jury had been selected and seated, the prosecutor

12   made her opening statement and began the presentation of testimony.  II CT 418-19.  After

13   petitioner began his cross-examination of the first witness, he asked the court for a continuance

14   in order to make himself familiar with documents concerning the witness.  2 RT 301:17-303:12.

15   The trial judge denied the request, noting that petitioner had had access to the material for weeks,

16   if not years, and that he had previously advised petitioner that the trial would be moving forward

17   with witnesses beginning that day.  Id.  After the trial judge denied petitioner's request, he

18   continued and concluded his examination of the witness.  2 RT 304:19-305:21.  A review of the

19   trial transcript reflects that petitioner did not recall the witness at any later time.

20   　　　　Petitioner now alleges that the trial court's failure to grant his continuance

21   violated his due process rights, as well as his right to "fundamental fairness."  ECF No. 1 at 16.

22   Petitioner argues that the trial court's failure to grant a continuance in order to allow petitioner to

23   prepare his own defense effectively denied petitioner his right to self-representation, and asks the

24   court to review the continuance under the four part test announced in Atmant v. Marquez, 772

25   F.2d 552 (9th Cir. 1985), cert. denied, 475 U.S. 1099 (1986).  ECF No. 1 at 17-18.  Petitioner

26   also alleges that this prejudicial error was compounded by the trial court's failure to appoint

1    advisory counsel to assist petitioner.  Id. at 17, n. 4.

2              *Governing Authority*

3              The United States Supreme Court has spoken on whether a defendant is entitled to

4    a continuance so that he may be represented by counsel of his choosing.  See Morris v. Slappy,

5    461 U.S. 1 (1983).  In the Morris case, the Court held that broad discretion must be granted to

6    trial courts on matters on continuances; "only an unreasoning and arbitrary 'insistence upon

7    expeditiousness in the face of a justifiable request for delay' violates the right to assistance of

8    counsel."  461 U.S. at 11-12 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).  In Ungar,

9    the Court observed that "[t]here are no mechanical tests for deciding when a denial of a

10   continuance is so arbitrary as to violate due process.  The answer must be found in the

11   circumstances present in every case, particularly in the reasons presented to the trial judge at the

12   time the request is denied."  376 U.S. at 589.

13             *Analysis*

14             For the reasons explained below, the California Supreme Court's summary denial

15   of this claim was entirely reasonable under Morris and Ungar.  Petitioner asks the court to

16   review the denial of his continuance under the Ninth Circuit's test announced in Armant, but

17   circuit authority does not constitute "clearly established Federal law" within the meaning of §

18   2254(d).  See Ortiz-Sandoval, 323 F.3d 1165, 1172 (9th Cir. 2003).  Even under Armant,

19   petitioner must show some prejudice resulting from denial of continuance in order to succeed.

20   Armant, 772 F.2d at 557.  There has been no such showing.

21             Petitioner argues that: (1) he was diligent in his request for self-representation; (2)

22   a continuance would have been useful so that petitioner could have formulated his own defense

23   strategy (obtain witnesses, prepare to examine and cross-examine witnesses, and decide what

24   jury instructions to request or to oppose); (3) the inconvenience to the court would have been

25   minimal; and (4) the prejudice to petitioner was enormous, as he had already been denied

26   advisory counsel and an investigator, and had language difficulties.  ECF No. 1 at 18.  Petitioner

1  additionally alleges "compounded" prejudice because he was denied advisory counsel.  ECF No.

2  1 at 17, n. 4.

3          Petitioner's arguments misstate the record.  At the time petitioner made his

4  request for a continuance he had advisory counsel, a court-appointed investigator, and a Russian

5  interpreter.   Moreover, although petitioner alleges that he was denied even a single day to

6  prepare for trial, the record reflects that petitioner did not move for a continuance at the time the

7  trial court granted his <u>Faretta</u> motion.  In fact, immediately after the court granted petitioner's

8  <u>Faretta</u> motion, defendant participated, among other things, in the court's hearing on his former

9  counsel's previously-filed motion in limine regarding jurisdiction (I RT 180-182), the

10  prosecution's motion to file an amended information (I RT 182-187), and the court's

11  arraignment on the amended information (I RT 188-198).  The following day, petitioner

12  participated in jury selection (I RT 219-223).

13          Petitioner instead waited until the jury was seated, the prosecution had called its

14  first witness, and petitioner was himself cross-examining that witness to seek additional time.  2

15  RT 301:17-304:16.  Petitioner's stated reason for requesting a continuance was his need to

16  become familiar with documents in connection with the witness.  2 RT 301:17-19, 302:2-10, 24-

17  26.  Also, as noted by the trial court, petitioner had already had ample time ("months, if not

18  years") to become familiar with the documents, and had been warned by the trial court that the

19  trial court would expect petitioner to be ready to proceed with witnesses that day.  2 RT 302:11-

20  303:10.  The record also reflects that petitioner was able to cross-examine the witness even after

21  his request was denied (2 RT 304:22-305:20), and that petitioner never sought to recall the

22  witness after he had (presumably) had additional time to review the documents at issue.

23  Petitioner alleges no facts explaining why he was not familiar with the document at issue, how

24  he was able to continue his examination of the witness after his request was denied, or why he

25  failed to ask for the witness to be recalled after he had had time to review the documents.

26          In short, petitioner has not shown that he made a *justifiable* request for a delay, or

18

that he was prejudiced by the denial.  Because the allegations of the petition do not entitle petitioner to relief under the Sixth and Fourteenth Amendments, the state court's rejection of the claim may not be disturbed.

### CLAIM THREE: Ineffective Assistance of Counsel

*Background*

On November 29, 2006, the trial court granted petitioner's motion to waive his right to counsel, and allowed the petitioner to proceed pro se.  The trial court appointed petitioner's former counsel as advisory counsel.  Petitioner now claims that pretrial counsel rendered ineffective assistance to petitioner because counsel: (1) failed to investigate adequately petitioner's case or engage in adequate discovery; (2) failed to interview any of the witnesses testifying against petitioner prior to trial; (3) failed to interview any possible favorable witnesses; (4) failed to file pretrial motions challenging the charges against petitioner with respect to the statute of limitations or stacking; and (5) "failed to challenge the fact that there was not one shred of physically [sic] evidence tying Petitioner to the alleged crimes, only the testimony of victims who had failed to bring timely charges."  ECF No. 1 at 19.

Petitioner further claims that he received ineffective assistance of appellate counsel, because counsel failed to raise on appeal the arguments made in petitioner's current habeas petition.  ECF No. 1 at 20.

Petitioner lastly claims that he received ineffective assistance from the court's interpreters because: (1) two of the interpreters were "ineffective in translating English to Russian to Petitioner in a coherent manner at trial which preventing [sic] Petitioner from understanding and comprehending most of what took place"; and (2) there were four translators who took turns during the trial.  ECF No. 1 at 19.

*Governing Authority*

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the effective assistance of counsel.  A showing of ineffective assistance of counsel has

two components.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, a petitioner

must demonstrate that, considering all the circumstances, counsel's performance fell below an

objective standard of reasonableness.  Id. at 687–88.  In assessing an ineffective assistance of

counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide

range of professional assistance,'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting

Strickland, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all

significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir.1990) (citing

Strickland, 466 U.S. at 689).  As the United States Supreme Court recently emphasized, "[t]he

standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two

apply in tandem, review is 'doubly' so."  Richter, 131 S.Ct. at 788 (internal quotations and

citations omitted). The determination to be made on federal habeas review, therefore, is not

whether counsel acted reasonably, but "whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard."  Id.

        The second factor required for a showing of ineffective assistance of counsel is

actual prejudice caused by the deficient performance.  Strickland, 466 U.S. at 693–94.  Prejudice

is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a

"probability sufficient to undermine confidence in the outcome."  Id.; see also Williams, 529

U.S. at 391–92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  On collateral review a

court need not determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies.  If it is easier to

dispose of an ineffectiveness claim on prejudice grounds, the court may do so.  Pizzuto v. Arave,

280 F.3d 949, 955 (9th Cir. 2002).

        The Strickland standards set forth above apply to appellate counsel as well as trial

counsel.  Smith v. Murray, 477 U.S. 527, 535–36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433

(9th Cir. 1989).  To prevail on a claim of ineffective assistance on appeal, a petitioner "must first

20

1  show that his counsel was objectively unreasonable . . . in failing to find arguable issues for

2  appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a

3  merits brief raising them."  Smith v. Robbins, 528 U.S. 259, 285 (2000) (internal citation

4  omitted). Petitioner then has the burden of demonstrating that he has suffered prejudice, or "a

5  reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he

6  would have prevailed on his appeal." Id. (citing Strickland, 466 U.S. at 694).

7          *Analysis*

8          *Pre-Trial Counsel*

9          Petitioner alleges that counsel failed to perform several key tasks, such as

10  interview witnesses or engage in "adequate" discovery.  ECF No. 1 at 19.  However, petitioner

11  provides the court with no facts in support of his allegations.  Id.  The petitioner, for example,

12  does not identify any witness whom counsel should have interviewed, what information this

13  witness would have provided, and why the information was important to petitioner's defense.

14          Petitioner's bald conclusions are insufficient to meet his burden and, even taking

15  his allegations as true, provide the court with no basis on which to determine if petitioner was

16  prejudiced.  See Wiggins, 539 U.S. at 534 (defendant must show that there is a reasonable

17  probability that, bout for counsel's unprofessional errors, the result of the proceeding would have

18  been different).  See also Dows v. Wood, 211 F.3d 480, 486–87 (9th Cir.), cert. denied, 531 U.S.

19  908 (2000) (factual claims not supported by the record present no basis for federal habeas relief);

20  Jones v. Gomez, 66 F.3d 199, 204–05 (9th Cir. 1995), cert. denied, 517 U.S. 1143 (1996); James

21  v. Borg, 24 F.3d 20, 26 (9th Cir.), cert. denied, 513 U.S. 935 (1994).

22          The California Supreme Court's summary denial therefore does not represent an

23  unreasonable determination that petitioner failed to present a prima facie claim of ineffective

24  assistance by his pre-trial counsel.

25          *Appellate Counsel*

26          Petitioner's sole allegation against his appellate counsel is that counsel "failed to

1  raise meritorius claims, e.g., those raised in this petition for writ of habeas corpus. . . ." ECF No.

2  1 at 20.  Taking this sparse allegation as true, petitioner fails to state a colorable claim of

3  ineffective assistance of counsel.

4        Appellate counsel does not have a constitutional obligation to raise every non-

5  frivolous issue requested by the client.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Often,

6  appellate counsel may properly omit issues if counsel reasonably foresees little or no likelihood

7  of success on that issue.  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); Knowles v.

8  Mirzayance, 556 U.S. 111, 127 (2009) ("Counsel also not required to have a tactical

9  reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for

10  recommending that a weak claim be dropped altogether.").  The "weeding out of weaker issues is

11  widely recognized as one of the hallmarks of effective appellate advocacy."  Miller, 882, F.2d at

12  1434.  See also Jones, 463 U.S. at 751 ("Experienced advocates since time beyond memory have

13  emphasized the importance of winnowing out weaker arguments on appeal and focusing on one

14  central issue, if possible, or at most on a few key issues.").  Because the claims raised in

15  petitioner's current habeas petition are without merit, appellate counsel's decision not to raise

16  them on appeal cannot fall outside the bounds of reasonably competent professional assistance.

17  For the same reasons that the claims are without merit, petitioner also cannot demonstrate that

18  counsel's decision not to raise them on appeal caused him to suffer any prejudice.  The state

19  Supreme Court accordingly was reasonable in its determination that petitioner failed to articulate

20  a prima facie claim of ineffective assistance by appellate counsel.

21        *Interpreters*

22        Petitioner alleges that he received ineffective assistance from the court's

23  interpreters because: (1) two could not translate in a "coherent manner," and (2) the translators

24  were switched throughout the trial.  As discussed above, petitioner has no clearly established

25  independent constitutional right to an interpreter.  His allegations accordingly do not present a

26  colorable constitutional claim.  Cf. Strickland, 466 U.S. at 685-86 (constitutional right to counsel

1    is right to effective assistance of counsel because Constitution "envisions counsel's playing a

2    role that is critical to the ability of the adversarial system to produce just results.").

3            Moreover, petitioner has not provided the court with sufficient detail regarding

4    the interpreters' alleged ineffectiveness.  For example, petitioner repeatedly misstates the

5    number of interpreters who assisted him, and also fails to name which two (of the four) failed to

6    provide competent translations.  Cf. Chacon, 36 F.3d at 1464-65 (interpreter affirmatively

7    misrepresented counsel's advice to client, resulting in ineffective assistance of counsel).  Given

8    the record before it, the state Supreme Court did not unreasonably deny the claim.

9            **CLAIM FOUR: Cumulative Errors, or "Miscarriage of Justice"**

10           Petitioner alleges that the cumulative effect of the constitutional errors raised in

11   his petition deprived petitioner of his right to a fair trial.  ECF No. 1 at 20-21.  He also appears to

12   claim that the errors indicate judicial bias, presumably by the trial judge.  Id.

13               *Governing Authority*

14           The Supreme Court has clearly established that the combined effect of multiple

15   court errors violates due process where it renders the resulting criminal trial fundamentally

16   unfair.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410

17   U.S. 284, 298 (1973)).  The cumulative effect of multiple errors can violate due process even

18   where no single error rises to the level of a constitutional violation or would independently

19   require reversal.  Id., citing Chambers, 410 U.S. at 290, n. 3.

20               *Analysis*

21           In this case, the state courts have reasonably determined that all of petitioner's

22   allegations of error either lack merit or do not state a prima facie claim for relief.  In other words,

23   the trial court did not err on any of the grounds raised by petitioner.  Accordingly, there cannot

24   be any cumulative effect as described in Chambers or Parle.  See Rupe v. Wood, 93 F.3d 1434,

25   1445 (9th Cir. 1996) (no reason to reverse for cumulative error where no violation of federal

26   rights occurred at trial).

1    Petitioner's vague allegation that the trial judge was biased against him,

2    presumably as demonstrated by the errors described in his petition, is not colorable.  To succeed

3    on a judicial bias claim, a prisoner must overcome a presumption of honesty and integrity in

4    those serving as adjudicators.  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  Bias can almost

5    never be demonstrated solely on the basis of a judicial ruling.  Liteky v. United States, 510 U.S.

6    540, 555 (1994).  Petitioner has alleged no examples of behavior by the trial judge that would

7    tend to show "such a high degree of favoritism or antagonism as to make fair judgment

8    impossible."  Id.  To the extent petitioner presented a free-standing judicial bias claim to the

9    state court, its summary denial was therefore entirely reasonable.

10                            **CONCLUSION**

11    For the reasons outlined above, the undersigned recommends that the court deny

12    the petition.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court

13    must issue or deny a certificate of appealability when it enters a final order adverse to the

14    applicant.  A certificate of appealability may issue only "if the applicant has made a substantial

15    showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set

16    forth in these findings and recommendations, a substantial showing of the denial of a

17    constitutional right has not been made in this case.

18                    Accordingly, IT IS HEREBY RECOMMENDED that:

19            1.      The petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254

20                    (ECF No. 1), be denied; and

21            2.      The District Court decline to issue a certificate of appealability.

22    These findings and recommendations are submitted to the United States District Judge assigned

23    to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight (28) days

24    after being served with these findings and recommendations, any party may file written

25    objections with the court and serve a copy on all parties.  Such a document should be captioned

26    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within twenty-eight (28) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 26, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:rb
raki0715.fr

25