IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VLADIMIR VASILIYEVICH RAKIN,

        Petitioner,             No. 2:10-cv-0715 LKK AC P

    vs.

M. MARTEL,

        Respondent.            FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se and in forma pauperis on his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the undersigned recommends that the petition be DENIED and that a certificate of appealability not issue.

**BACKGROUND**

        Petitioner was convicted by jury in 2006 of rape, lewd and lascivious acts with a child, battery, kidnaping, and related charges. II CT 494-500, 580, 618-21. In 2007, the trial court sentenced petitioner to a determinate term of 26 years and eight months, plus an indeterminate term of 75 years to life. III CT 618-21.

        Petitioner was born in Russia in 1957, and emigrated to the United States in 1994.

1

III CT 604.  At the time of his trial, petitioner did not speak, read, or write English.  ECF No. 1 at 12.  During the fourteen-day trial, four different Russian interpreters translated proceedings for petitioner.  E.g., II CT 373 (interpreter Alex Fesenko); 379 (interpreter Edward Hairullin); 416 (interpreters Irena Kravt and Elena Tzukan).

On November 5, 2006, the first day of trial proceedings and before a jury was seated, petitioner through his counsel indicated that he may want to represent himself.  I RT 2:4-8:13.  At that time, the trial court specifically advised petitioner that if his motion to represent himself was granted, he would not receive any continuances in order to acquaint himself with the trial materials.  I RT 4:3-9; 7:23-26.  Counsel continued for the petitioner until November 28, 2006, when petitioner orally made a <u>Faretta</u>[1] motion to waive his right to counsel.  I RT 128:20-28; 163:3-176:13.  After a colloquy, the trial court provided petitioner with written notice of various advisements.  II CT 403; I RT 166:10-167:6, 170:21-176:13.  The written advisements stated, among other things, that petitioner's "[p]enalties for offense if found guilty are 49 years + 45 years to life."  II CT 403.

The trial judge told petitioner that he would not rule on petitioner's <u>Faretta</u> motion until the following day, and advised petitioner to review the written warnings with the court's interpreter.  I RT 166:10-167:6.  On November 29, 2006, the trial court determined that petitioner had reviewed the written warnings, and granted the motion.  I RT 175:16-176:13.  The trial court also appointed petitioner's former counsel as advisory counsel.  I RT 176:7-179:28; 180:3-22 (court advises petitioner that court has appointed advisory counsel; petitioner responds, "That's a wonderful idea, thank you."); I RT 208:20-209:11.  The court also appointed a Conflict Criminal Defender's Investigator for petitioner.  I CT 402; I RT 209:12-20.

On December 5, 2006, after the jury had been selected and seated, the prosecutor made her opening statement, and began direct examination of the state's first witness.  II CT

---

[1] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

418-19.  After petitioner began his cross-examination, he asked the court for a continuance in order to make himself familiar with documents concerning the witness.  2 RT 301:17-303:12. The trial judge denied the request, noting that petitioner had had access to the material for weeks, if not years, and that he had previously advised petitioner that the trial would be moving forward with witnesses beginning that day.  Id.  After the trial judge denied petitioner's request, petitioner continued and concluded his examination of the witness.  2 RT 304:19-305:21.  A review of the transcripts reflects that petitioner did not recall the witness at any later time.

On December 13, 2006, the jury returned verdicts convicting petitioner as charged on all counts but one, Count 12 (felony domestic abuse).  II CT 494-500.  As to Count 12, petitioner was convicted of the misdemeanor lesser offense of simple battery upon his wife. II CT 498.  The jury found true the multiple victim "One Strike" circumstance as to four of the counts.  II CT 495-97.

On February 2, 2007, the trial court sentenced petitioner to a determinate term of twenty six years and eight months, and an indeterminate term of 75 years to life.  III CT 618-21; 3 RT 700:17-704:7.  The indeterminate term consisted of five consecutive terms of 15 years to life.  III CT 620-21; 3 RT 700:17-701:16.

**PROCEDURAL HISTORY**

Petitioner appealed, claiming among other things that his Faretta waiver was invalid because the trial court had incorrectly advised him about his possible indeterminate term. See Lod. Doc. 1.  The California Court of Appeal initially reversed the convictions on three counts, and affirmed the remainder.  See ECF No. 1 at 32-55.  On October 21, 2008, after rehearing, the Court of Appeal issued a decision striking one count of child abuse, and reversing a conviction for one count of attempted rape.  See Lod. Doc. 10.  The indeterminate portion of petitioner's sentence was accordingly reduced from 75 years to life, to 60 years to life.  See ECF No. 25 at 8-9.

The Court of Appeal found petitioner's claim that his Faretta waiver was invalid

3

1  to be without merit, both upon initial consideration and upon rehearing.  <u>See</u> ECF No. 1 at 38-42;

2  Lod. Doc. 10 at 7-11.

3             On January 14, 2009, the state Supreme Court denied review of the Court of

4  Appeal's decision.  Lod. Doc. 12.

5             On March 23, 2010, petitioner constructively filed the current petition, noting that

6  all claims, other than that challenging his <u>Faretta</u> waiver, were not exhausted.  ECF No. 1 at 5.

7  Petitioner also sought a stay in order to exhaust his issues before the state court.  ECF No. 1 at 5,

8  21-22.  On November 16, 2010, the court granted petitioner a stay while he completed

9  exhaustion of his state court remedies.  ECF No. 12.

10            On December 20, 2010, petitioner filed a petition for writ of habeas corpus with

11 the state Supreme Court, raising the following issues: (1) petitioner's Sixth and Fourteenth

12 Amendment rights were violated because he did not knowingly and intelligently waive his right

13 to counsel before his <u>Faretta</u> motion was granted; (2) petitioner's due process and fundamental

14 fairness rights were violated when the trial court denied his request for a continuance; (3)

15 petitioner received ineffective assistance of his trial counsel, his appellate counsel, and his trial

16 translator; and (4) petitioner's conviction constitutes a "miscarriage of justice" and a "manifest

17 injustice."  Lod. Doc. 13.

18            On June 15, 2011, the state Supreme Court denied the exhaustion petition in an

19 unexplained "postcard denial" order.  Lod. Doc. 15.

20            On July 25, 2011, this court ordered that the stay be lifted and the petition served.

21 ECF No. 17.  On November 10, 2010, respondent filed his answer (ECF No. 25), and on January

22 11, 2012, petitioner filed his traverse (ECF No. 30).

23        **PETITIONER'S CLAIMS**

24            Petitioner now raises the following claims:

25            (1) The trial court violated petitioner's Sixth and Fourteenth Amendment rights

26 when it granted his <u>Faretta</u> motion, because petitioner did not make a knowing and intelligent

4

1    waiver (ECF No. 1 at 13-16);

2          (2) The trial court violated petitioner's constitutional rights to due process and

3    "fundamental fairness" when it denied petitioner's request for a continuance after granting

4    petitioner's <u>Faretta</u> motion (ECF No. 1 at 16-18);

5          (3) Petitioner's Sixth Amendment rights were violated when he received

6    ineffective assistance of his trial counsel, his appellate counsel, and his trial translators (ECF No.

7    1 at 18-20); and

8          (4) "Petitioner's conviction constitutes a 'miscarriage of justice' and 'manifest

9    injustice'" (ECF No. 1 at 20-21).

10          In his introduction, petitioner claims that he is "actually and factually innocent"

11   of the charged crimes, and that his convictions "stem from a long running domestic dispute,

12   stemming from 'bad-blood' between Petitioner and the victims."  ECF No. 1 at 12.  However,

13   petitioner does not provide any further information or argument in support of his assertion that

14   he is actually innocent of the crimes for which he was convicted.  Accordingly, the undersigned

15   does not construe the innocence rhetoric in the introduction to the petition as stating a free-

16   standing claim for relief.

17          Respondent does not dispute that the petition is timely, and concedes that

18   petitioner has exhausted his state remedies.  <u>See</u> ECF No. 25.

19          **STANDARDS GOVERNING THE AVAILABILITY OF HABEAS RELIEF**

20   **A.    Applicable Statutory Provisions**

21          28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

22   1996 ("AEDPA"), provides in relevant part as follows:

23          (d) An application for a writ of habeas corpus on behalf of a person
             in custody pursuant to the judgment of a state court shall not be
24          granted with respect to any claim that was adjudicated on the
             merits in State court proceedings unless the adjudication of the
25          claim –
                  (1) resulted in a decision that was contrary to, or involved
26                an unreasonable application of, clearly established Federal

1  law, as determined by the Supreme Court of the United
  States; or

2  (2) resulted in a decision that was based on an unreasonable
  determination of the facts in light of the evidence presented

3  in the State court proceeding.

4  Section 2254(d) constitutes a "constraint on the power of a federal habeas court to

5 grant a state prisoner's application for a writ of habeas corpus." (Terry) Williams v. Taylor, 529

6 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial

7 review," or "by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). If

8 either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo

9 finding of constitutional error. See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

10  The statute applies whenever the state court has denied a federal claim on its

11 merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct.

12 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the

13 merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785

14 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it

15 is unclear whether a decision appearing to rest on federal grounds was decided on another

16 basis)). "The presumption may be overcome when there is reason to think some other

17 explanation for the state court's decision is more likely." Id. at 785.

18  **1.**  **"Clearly Established Federal Law"**

19  The phrase "clearly established Federal law" in § 2254(d)(1) refers to the

20 "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer

21 v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal

22 principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th

23 Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court

24 precedent may constitute "clearly established Federal law," but circuit law has persuasive value

25 regarding what law is "clearly established" and what constitutes "unreasonable application" of

26 that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360

F.3d 1044, 1057 (9th Cir. 2004).

### 2.      "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact.  Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003).  The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief.  Williams, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams, 529 U.S. at 405.  This includes use of the wrong legal rule or analytical framework.  "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA."  Benn v. Lambert, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).  A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts.  Williams, 529 U.S. at 406, 412-13; Ramdass v. Angelone, 530 U.S. 156, 165-66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case."  Williams, 529 U.S. at 407-08.  It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).  This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable."  Williams, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause).  State court

1  decisions can be objectively unreasonable when they interpret Supreme Court precedent too

2  restrictively, when they fail to give appropriate consideration and weight to the full body of

3  available evidence, and when they proceed on the basis of factual error.  See, e.g., Williams, 529

4  U.S. at 397-98; Wiggins, 539 U.S. at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909

5  (2005); Porter v. McCollum, 558 U.S. 30, 42 (2009).

6           The "unreasonable application" clause permits habeas relief based on the

7  application of a governing principle to a set of facts different from those of the case in which the

8  principle was announced.  Lockyer, 538 U.S. at 76.  AEDPA does not require a nearly identical

9  fact pattern before a legal rule must be applied.  Panetti v. Quarterman, 551 U.S. 930, 953

10  (2007).  Even a general standard may be applied in an unreasonable manner.  Id.  In such cases,

11  AEDPA deference does not apply to the federal court's adjudication of the claim.  Id. at 948.

12           Where the state court's adjudication is set forth in a reasoned opinion,

13  §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis."

14  Frantz, 533 F.3d at 738 (emphasis in original).  A different rule applies where the state court

15  rejects claims summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held

16  that when a state court denies a claim on the merits but without a reasoned opinion, the federal

17  habeas court must determine what arguments or theories may have supported the state court's

18  decision, and subject those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at

19  786.

20           Evidence presented for the first time in federal court is not pertinent to the §

21  2254(d)(1) analysis.  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this

22  stage is whether the state court reasonably applied clearly established federal law to the facts

23  before it.  Id.

24           **3.     "Unreasonable Determination Of The Facts"**

25           Relief is also available under AEDPA where the state court predicated its

26  adjudication of a claim on an unreasonable factual determination.  Section 2254(d)(2).  The

statute explicitly limits this inquiry to the evidence that was before the state court.

A state court factual conclusion can be unreasonable if it is not fairly supported by the evidence presented in the state proceeding.  See, e.g., Wiggins, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); Bradley v. Duncan, 315 F.3d 1091, 1096-98 (9th Cir. 2002)  (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), cert. denied, 540 U.S. 963 (2003).  Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2).  See Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (ordering relief where state court made unreasonable finding that the prosecutor's asserted race-neutral reasons for striking African-American jurors were true).  An unreasonable determination of fact can also exists where the state court made its findings according to a flawed process -- for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it.  See Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).

### CLAIM ONE: Violation of Sixth and Fourteenth Amendments

Petitioner alleges that his conviction violates the Sixth and Fourteenth Amendments because his Faretta waiver was invalid and unknowing.  See ECF No. 1 at 13-16. He argues that the waiver was defective because: (1) he was inaccurately advised about the length of his indeterminate sentence; (2) he does not speak, read, or understand English; (3) he was provided with different translators during the trial, each of whom had no legal knowledge; and (4) he was not provided with standby counsel.  Id.

***The Inaccurate Advisement***

*Background*

Petitioner alleges that the circumstances surrounding his decision to represent

1  himself render his waiver unknowing and involuntary because the trial court incorrectly advised

2  him of his potential maximum sentence.  Petitioner argues that he was advised by the trial court

3  that his potential indeterminate sentence was 45 years to life, rather than the 75 years to life to

4  which he was eventually sentenced.  See ECF No. 1 at 13; see also II CT 403 (written Faretta

5  warnings signed by petitioner on November 29, 2006 reads that "Penalties for offense if found

6  guilty are 49 years + 45 years to life.")

7        The state Court of Appeal, in its amended opinion filed October 21, 2008, found

8  that petitioner's Faretta waiver was valid notwithstanding the allegedly inaccurate advisement.

9  See Lod. Doc. No. 10 at 8.

10        [Petitioner's] focus on the *Faretta* form's advisement of the
          indeterminate term of 45 years to life versus the court's imposition
11        of an indeterminate sentence of 75 years to life is too narrow.  On
          appeal, we consider whether the record *as a whole* demonstrates
12        that [petitioner] understood the disadvantages of self-
          representation.  (*Lawley*, *supra*, 27 Cal.4th at p. 140.)  The court in
13        this case provided defendant with a written and lengthy oral
          explanation of the difficulties he faced in representing himself.
14        The court gave defendant time to review the form with a Russian
          interpreter after the hearing, and postponed its decision on the
15        *Faretta* motion until the following morning.  Defendant asked the
          court several question about the rules of evidence and criminal
16        procedure, but had no questions about his potential sentence.  In
          the circumstances of this case, including defendant's age of 49
17        years at the time of sentencing, it is reasonable to infer that the
          potential indeterminate sentence was likely among defendant's
18        lesser concerns at the time he signed the *Faretta* waiver.  Although
          the difference between 45 years to life and 75 years to life is 30
19        years, that difference would have been merely academic to a 49-
          year-old man properly advised of a potential *determinate* sentence
20        of 49 years and the fact that the potential punishment included
          incarceration for "life."

21

22  Lodged Doc. 10 at 10-11.

23        *Governing Authority*

24        This court's review under 28 U.S.C. § 2254(d) focuses on the last reasoned state

25  court state court decision.  Collins v. Runnels, 603 F.3d 1127, 1130 (9th Cir. 2010); see also Ylst

26  v. Nunnemaker, 501 U.S. 797, 806 (1991).  Because the California Court of Appeal considered

1   and denied petitioner's claim that his waiver was involuntary and unknowing, this court

2   considers only whether that court's decision was: (1) contrary to, or an unreasonable application

3   of, clearly established federal law; or (2) based on an unreasonable determination of the facts.

4   The "clearly established federal law" regarding the waiver of counsel is articulated in two United

5   States Supreme Court decisions.

6          A person brought to trial in any state or federal court must be afforded the right to

7   the assistance of counsel. Faretta, 422 U.S. at 807. The Sixth Amendment includes the converse

8   guarantee that a criminal defendant has the right to proceed without counsel when he voluntarily

9   and intelligently elects to do so. See id. The two rights are mutually exclusive: the Constitution

10  does not allow the government to thrust counsel upon the accused, against the accused's

11  considered wish, in contravention of the nearly universal conviction that forcing a lawyer upon

12  an unwilling defendant is contrary to the defendant's basic right to defend him- or herself if he or

13  she truly wants to do so. Id. at 817, 820.

14         Because a defendant who exercises the right to self-representation foregoes the

15  benefits of exercising the right to counsel, the accused must knowingly and intelligently

16  relinquish those benefits. Id. at 835. When a defendant elects to waive the right to be

17  represented by trial counsel, warnings of the pitfalls of proceeding to trial without counsel must

18  be rigorously conveyed. Iowa v. Tovar, 541 U.S. 77, 89 (2004).

19         Although a defendant need not himself have the skill and experience of a lawyer

20  in order competently and intelligently to choose self-representation, the defendant should be

21  made aware of the dangers and disadvantages of self-representation. Faretta, 422 U.S. at 835.

22  However, the Supreme Court "has expressly declined to prescribe any formula or script to be

23  read to a defendant who states that he elects to proceed without counsel." Tovar, 541 U.S. at 88.

24  Rather, the information a defendant must possess in order to make an intelligent election will

25  depend on a range of case-specific factors, including the defendant's education or sophistication,

26  the complex or easily grasped nature of the charge, and the stage of the proceeding. Id. at 88, 92

1    (quoting U.S. v. Ruiz, 536 U.S. 622, 629 (2002)).

2            *Analysis*

3            In this case, the state Court of Appeal did not unreasonably apply clearly

4    established federal law or otherwise unreasonably determine that petitioner failed to establish an

5    invalid waiver of counsel.  Clearly established federal law requires a reviewing court to

6    determine if the trial court's warnings gave the waiving defendant a full understanding of "the

7    nature of the right and how it would likely apply *in general* in the circumstances – even though

8    the defendant may not know the *specific detailed* consequences of his invoking it."  See Ruiz,

9    536 U.S. at 629.  The appellate court did just that, taking into account that petitioner was 49

10   years old when he was advised that he faced penalties including a determinate term of up to 49

11   years, plus a consecutive term of 45 years to life.  See Lod. Doc. 10 at 10-11; I RT 164:20-165:4.

12

13           The state court of appeal reasonably interpreted the trial record, which includes a

14   lengthy colloquy during which the trial court advised petitioner: (1) that he faced a determinate

15   term of forty-nine years; and (2) that he faced a potentially life-long indeterminate term after

16   completing his determinate forty-nine year sentence.  See II CT 403.  There is nothing in this

17   record to suggest that the trial court affirmatively misled the petitioner.  In short, petitioner was

18   aware at the time he made his Faretta motion that he faced spending the rest of his life in prison.

19   The advisement was sufficient to inform him that the indeterminate life portion of his potential

20   sentence, whatever its minimum duration, might not even begin to run until he was 98 years old.

21   How that sentence would be structured is a "specific detailed consequence" of which the trial

22   court had no duty to ensure that petitioner was precisely aware.  See Ruiz, 536 U.S. at 629.  Even

23   if the trial court erred in stating the minimum term applicable to the indeterminate life sentence,

24   it was not objectively unreasonable of the state appellate court to conclude that petitioner was

25   sufficiently aware of the stakes to execute a valid Faretta waiver.  Neither Faretta nor Tovar

26   requires more from a trial court than was done here.  Accordingly, 28 U.S.C. § 2254(d) bars

1    relief on this claim.

2                    ***Language-Related Claims***

3                    *Background*

4            Petitioner argues that his Fourteenth Amendment rights were violated when he

5    was permitted to represent himself, because he could not read, write, or speak English and

6    therefore "lacked the capacity to comprehend or understand the rights he was waiving, along

7    with the fact that he lacked the ability to communicate coherently, even with the aid of an

8    interpreter. . . ." ECF No. 1 at 14.  Petitioner also seems to argue that his Faretta motion should

9    have been denied under state law, or that he should have been granted advisory counsel, because

10   he lacked the ability to communicate effectively even with an interpreter.

11           Petitioner suggests that he was unable to communicate because he had different

12   translators throughout the trial.  He argues that having different translators denied him "a

13   cohesion of the entire trial" because the interpreters "could only interpret on the days [sic]

14   proceedings they witnessed, and could not offer translations based on a continued presence."

15   Petitioner claims that "the effect and prejudice or having multiple interpreters. . . . cannot be

16   overstated. . . ." and that in this case, the disadvantage was compounded because the interpreters

17   had no legal knowledge and were not attorneys.  ECF No. 1 at 14, n.2.  Petitioner further alleges

18   that "[n]one of the three was able to adequately translate the testimony, legal arguments and

19   concepts, jury instructions, etc."  ECF No. 1 at 14.

20                   *Governing Authority*

21           Petitioner's language-based claims (and all remaining claims) were exhausted in

22   his state habeas petition, which was denied by the California Supreme Court without a reasoned

23   decision.  Under California law, such a disposition indicates that the court assumed the truth of

24   all factual allegations asserted in support of the claim and nonetheless concluded that those facts

25   did not state a claim entitling petitioner to relief.  People v. Duvall, 9 Cal. 4th 464, 474 (1995);

26   People v. Romero, 8 Cal. 4th 728, 737 (1994).  This court therefore reviews whether the state

                                            13

1  court's determination that petitioner failed to state a prima facie case is reasonable under §

2  2254(d).  Nunes v. Mueller, 350 F.3d 1045, 1054-55 (9th Cir. 2003), cert. denied, 543 U.S. 1038

3  (2004).

4        Petitioner does not cite, nor has this court identified, any federal authority which

5  mandates that a criminal defendant be provided with the same translator throughout his or her

6  trial, or with a translator who has legal knowledge akin to that of an attorney.  Indeed, according

7  to the Court of Appeals for the Ninth Circuit, the United States Supreme Court has not yet

8  recognized a constitutional right to a court-appointed interpreter.  United States v. Si, 333 F.3d

9  1041, 1043 n.3 (9th Cir. 2003) (direct appeal of federal criminal conviction).  Respondent "does

10 not dispute that nearly self-evident proposition that an indigent defendant who could speak and

11 understand no English would have the right to have his trial proceedings translated so as to

12 permit him to participate effectively in his own defense."  ECF No. 23 at 18, citing United States

13 ex rel. Negron v. New York, 434 F.2d 386, 389 (2d Cir. 1970).  The undersigned readily accepts

14 this proposition.  The scope of this right to interpretive services, however, is limited.

15       The United States Supreme Court has held that the refusal to appoint an

16 interpreter is "a matter largely resting in the discretion of the trial court."  Perovich v. United

17 States, 205 U.S. 86, 91 (1907); see also Si, 333 F.3d at 1043, n. 3; United States v. Shin, 953

18 F.2d 559, 561 (9th Cir. 1992) ("As a constitutional matter, the appointment of interpreters is

19 within the district court's discretion."); United States v. Martinez, 616 F.2d 185, 188 (5th Cir.

20 1980), cert. denied, 450 U.S. 994 (1981) ("The use of courtroom interpreters involves a

21 balancing of the defendant's constitutional rights to confrontation and due process against the

22 public's interest in the economical administration of criminal law. . . .That balancing is

23 committed to the sound discretion of the trial judge, reversible only on a showing of abuse.").

24       In other words, the right to an interpreter does not appear to enjoy independent

25 constitutional stature.  Instead, it derives from and exists to the extent necessary to protect a

26 criminal defendant's rights to confront witnesses,  participate meaningfully in his or her own

1  defense, be assisted by counsel, etc.  Accordingly, a criminal defendant denied a translator can

2  present colorable claims under the Sixth or Fourteenth Amendments if, for example, the

3  defendant had been unable to communicate with his counsel or to understand the proceedings.

4  See, e.g., Chacon v. Wood, 36 F.3d 1459 (9th Cir. 1994) (petitioner stated colorable Sixth

5  Amendment ineffective assistance of counsel claim where interpreter misled defendant,

6  impairing communication between attorney and defendant).  No federal authority establishes a

7  right to relief for inadequate translation services without demonstrated impairment of a specific

8  trial right.

9            *Analysis*

10           Petitioner alleges that his ability to represent himself was hampered by the trial

11  court's failure to give him a single interpreter with legal knowledge, and/or advisory counsel, in

12  violation of his Sixth and Fourteenth Amendment rights.  The California Supreme Court's

13  summary rejection of this claim was not unreasonable, because petitioner has no clearly

14  established constitutional right to his "choice" of interpreters.[2]  Petitioner fails to identify any

15  critical stage of the proceeding at which he did not have an interpreter.  Petitioner cites no

16  mistake or error by any interpreter, either inadvertent or intentional, and identifies no specific

17  instance when he was unable to question a witness, to understand the proceedings, or to

18  communicate with the court or with counsel.  Cf., e.g., I RT 163:20-22 (petitioner had equivalent

19  of three years college in Russia); I RT 164:5-8 (petitioner had received training in Russian

20  jurisprudence while serving in Russian army); I RT 170:21-176:1 (colloquy between trial court

21  and petitioner regarding waiver ends by petitioner telling trial court, "I accept your challenge.").

22  A fairminded jurist could reasonably conclude on the basis of the trial record that petitioner was

23  able to proceed with the Russian interpreters who were provided throughout the trial

24  proceedings, and demonstrated an ability to communicate effectively.

25  _____

26          [2]      Even the right to choice of counsel is limited to those defendants who can retain
    counsel.  Shell v. Witek, 218 F.3d 1017, 1025-26 (9th Cir. 2000) (en banc).

                                          15

1    The California Supreme Court also reasonably rejected petitioner's claim that he

2 was denied due process because he was not appointed advisory counsel.  The trial record reflects

3 that petitioner was appointed advisory counsel.  See I RT 176-180.

4    Finally, to the extent petitioner relies on state law for his claims regarding Faretta

5 waiver or the interpreters (see ECF No. 1 at 15), petitioner fails to allege facts that would entitle

6 him to relief in this court.  Alleged errors in the application of state law are not cognizable in

7 federal habeas corpus.  See, e.g., Wilson v. Corcoran, _ U.S. _, 131 S.Ct. 13, 16 (2010); Estelle

8 v. McGuire, 502 U.S. 62, 67-68 (1991).

9    **CLAIM TWO: Denial of Petitioner's Request for a Continuance**

10    *Background*

11    On December 5, 2006, after the jury had been selected and seated, the prosecutor

12 made her opening statement and began the presentation of testimony.  II CT 418-19.  After

13 petitioner began his cross-examination of the first witness, he asked the court for a continuance

14 in order to make himself familiar with documents concerning the witness.  2 RT 301:17-303:12.

15 The trial judge denied the request, noting that petitioner had had access to the material for weeks,

16 if not years, and that he had previously advised petitioner that the trial would be moving forward

17 with witnesses beginning that day.  Id.  After the trial judge denied petitioner's request, he

18 continued and concluded his examination of the witness.  2 RT 304:19-305:21.  A review of the

19 trial transcript reflects that petitioner did not recall the witness at any later time.

20    Petitioner now alleges that the trial court's failure to grant his continuance

21 violated his due process rights, as well as his right to "fundamental fairness."  ECF No. 1 at 16.

22 Petitioner argues that the trial court's failure to grant a continuance in order to allow petitioner to

23 prepare his own defense effectively denied petitioner his right to self-representation, and asks the

24 court to review the continuance under the four part test announced in Atmant v. Marquez, 772

25 F.2d 552 (9th Cir. 1985), cert. denied, 475 U.S. 1099 (1986).  ECF No. 1 at 17-18.  Petitioner

26 also alleges that this prejudicial error was compounded by the trial court's failure to appoint

1   advisory counsel to assist petitioner.  Id. at 17, n. 4.

2            *Governing Authority*

3            The United States Supreme Court has spoken on whether a defendant is entitled to

4   a continuance so that he may be represented by counsel of his choosing.  See Morris v. Slappy,

5   461 U.S. 1 (1983).  In the Morris case, the Court held that broad discretion must be granted to

6   trial courts on matters on continuances; "only an unreasoning and arbitrary 'insistence upon

7   expeditiousness in the face of a justifiable request for delay' violates the right to assistance of

8   counsel."  461 U.S. at 11-12 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).  In Ungar,

9   the Court observed that "[t]here are no mechanical tests for deciding when a denial of a

10  continuance is so arbitrary as to violate due process.  The answer must be found in the

11  circumstances present in every case, particularly in the reasons presented to the trial judge at the

12  time the request is denied."  376 U.S. at 589.

13           *Analysis*

14           For the reasons explained below, the California Supreme Court's summary denial

15  of this claim was entirely reasonable under Morris and Ungar.  Petitioner asks the court to

16  review the denial of his continuance under the Ninth Circuit's test announced in Armant, but

17  circuit authority does not constitute "clearly established Federal law" within the meaning of §

18  2254(d).  See Ortiz-Sandoval, 323 F.3d 1165, 1172 (9th Cir. 2003).  Even under Armant,

19  petitioner must show some prejudice resulting from denial of continuance in order to succeed.

20  Armant, 772 F.2d at 557.  There has been no such showing.

21           Petitioner argues that: (1) he was diligent in his request for self-representation; (2)

22  a continuance would have been useful so that petitioner could have formulated his own defense

23  strategy (obtain witnesses, prepare to examine and cross-examine witnesses, and decide what

24  jury instructions to request or to oppose); (3) the inconvenience to the court would have been

25  minimal; and (4) the prejudice to petitioner was enormous, as he had already been denied

26  advisory counsel and an investigator, and had language difficulties.  ECF No. 1 at 18.  Petitioner

17

additionally alleges "compounded" prejudice because he was denied advisory counsel.  ECF No. 1 at 17, n. 4.

Petitioner's arguments misstate the record.  At the time petitioner made his request for a continuance he had advisory counsel, a court-appointed investigator, and a Russian interpreter.  Moreover, although petitioner alleges that he was denied even a single day to prepare for trial, the record reflects that petitioner did not move for a continuance at the time the trial court granted his <u>Faretta</u> motion.  In fact, immediately after the court granted petitioner's <u>Faretta</u> motion, defendant participated, among other things, in the court's hearing on his former counsel's previously-filed motion in limine regarding jurisdiction (I RT 180-182), the prosecution's motion to file an amended information (I RT 182-187), and the court's arraignment on the amended information (I RT 188-198).  The following day, petitioner participated in jury selection (I RT 219-223).

Petitioner instead waited until the jury was seated, the prosecution had called its first witness, and petitioner was himself cross-examining that witness to seek additional time.  2 RT 301:17-304:16.  Petitioner's stated reason for requesting a continuance was his need to become familiar with documents in connection with the witness.  2 RT 301:17-19, 302:2-10, 24-26.  Also, as noted by the trial court, petitioner had already had ample time ("months, if not years") to become familiar with the documents, and had been warned by the trial court that the trial court would expect petitioner to be ready to proceed with witnesses that day.  2 RT 302:11-303:10.  The record also reflects that petitioner was able to cross-examine the witness even after his request was denied (2 RT 304:22-305:20), and that petitioner never sought to recall the witness after he had (presumably) had additional time to review the documents at issue.  Petitioner alleges no facts explaining why he was not familiar with the document at issue, how he was able to continue his examination of the witness after his request was denied, or why he failed to ask for the witness to be recalled after he had had time to review the documents.

In short, petitioner has not shown that he made a *justifiable* request for a delay, or

18

that he was prejudiced by the denial.  Because the allegations of the petition do not entitle petitioner to relief under the Sixth and Fourteenth Amendments, the state court's rejection of the claim may not be disturbed.

### CLAIM THREE: Ineffective Assistance of Counsel

*Background*

On November 29, 2006, the trial court granted petitioner's motion to waive his right to counsel, and allowed the petitioner to proceed pro se.  The trial court appointed petitioner's former counsel as advisory counsel.  Petitioner now claims that pretrial counsel rendered ineffective assistance to petitioner because counsel: (1) failed to investigate adequately petitioner's case or engage in adequate discovery; (2) failed to interview any of the witnesses testifying against petitioner prior to trial; (3) failed to interview any possible favorable witnesses; (4) failed to file pretrial motions challenging the charges against petitioner with respect to the statute of limitations or stacking; and (5) "failed to challenge the fact that there was not one shred of physically [sic] evidence tying Petitioner to the alleged crimes, only the testimony of victims who had failed to bring timely charges."  ECF No. 1 at 19.

Petitioner further claims that he received ineffective assistance of appellate counsel, because counsel failed to raise on appeal the arguments made in petitioner's current habeas petition.  ECF No. 1 at 20.

Petitioner lastly claims that he received ineffective assistance from the court's interpreters because: (1) two of the interpreters were "ineffective in translating English to Russian to Petitioner in a coherent manner at trial which preventing [sic] Petitioner from understanding and comprehending most of what took place"; and (2) there were four translators who took turns during the trial.  ECF No. 1 at 19.

*Governing Authority*

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the effective assistance of counsel.  A showing of ineffective assistance of counsel has

two components.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, a petitioner

must demonstrate that, considering all the circumstances, counsel's performance fell below an

objective standard of reasonableness.  Id. at 687–88.  In assessing an ineffective assistance of

counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide

range of professional assistance,'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting

Strickland, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all

significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir.1990) (citing

Strickland, 466 U.S. at 689).  As the United States Supreme Court recently emphasized, "[t]he

standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two

apply in tandem, review is 'doubly' so."  Richter, 131 S.Ct. at 788 (internal quotations and

citations omitted). The determination to be made on federal habeas review, therefore, is not

whether counsel acted reasonably, but "whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard."  Id.

The second factor required for a showing of ineffective assistance of counsel is

actual prejudice caused by the deficient performance.  Strickland, 466 U.S. at 693–94.  Prejudice

is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a

"probability sufficient to undermine confidence in the outcome."  Id.; see also Williams, 529

U.S. at 391–92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  On collateral review a

court need not determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies.  If it is easier to

dispose of an ineffectiveness claim on prejudice grounds, the court may do so.  Pizzuto v. Arave,

280 F.3d 949, 955 (9th Cir. 2002).

The Strickland standards set forth above apply to appellate counsel as well as trial

counsel.  Smith v. Murray, 477 U.S. 527, 535–36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433

(9th Cir. 1989).  To prevail on a claim of ineffective assistance on appeal, a petitioner "must first

20

1   show that his counsel was objectively unreasonable . . . in failing to find arguable issues for

2   appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a

3   merits brief raising them." Smith v. Robbins, 528 U.S. 259, 285 (2000) (internal citation

4   omitted). Petitioner then has the burden of demonstrating that he has suffered prejudice, or "a

5   reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he

6   would have prevailed on his appeal." Id. (citing Strickland, 466 U.S. at 694).

7       *Analysis*

8       *Pre-Trial Counsel*

9       Petitioner alleges that counsel failed to perform several key tasks, such as

10  interview witnesses or engage in "adequate" discovery. ECF No. 1 at 19.  However, petitioner

11  provides the court with no facts in support of his allegations.  Id.  The petitioner, for example,

12  does not identify any witness whom counsel should have interviewed, what information this

13  witness would have provided, and why the information was important to petitioner's defense.

14      Petitioner's bald conclusions are insufficient to meet his burden and, even taking

15  his allegations as true, provide the court with no basis on which to determine if petitioner was

16  prejudiced. See Wiggins, 539 U.S. at 534 (defendant must show that there is a reasonable

17  probability that, bout for counsel's unprofessional errors, the result of the proceeding would have

18  been different). See also Dows v. Wood, 211 F.3d 480, 486–87 (9th Cir.), cert. denied, 531 U.S.

19  908 (2000) (factual claims not supported by the record present no basis for federal habeas relief);

20  Jones v. Gomez, 66 F.3d 199, 204–05 (9th Cir. 1995), cert. denied, 517 U.S. 1143 (1996); James

21  v. Borg, 24 F.3d 20, 26 (9th Cir.), cert. denied, 513 U.S. 935 (1994).

22      The California Supreme Court's summary denial therefore does not represent an

23  unreasonable determination that petitioner failed to present a prima facie claim of ineffective

24  assistance by his pre-trial counsel.

25      *Appellate Counsel*

26      Petitioner's sole allegation against his appellate counsel is that counsel "failed to

21

raise meritorius claims, e.g., those raised in this petition for writ of habeas corpus. . . ." ECF No.

1 at 20.  Taking this sparse allegation as true, petitioner fails to state a colorable claim of

ineffective assistance of counsel.

Appellate counsel does not have a constitutional obligation to raise every non-frivolous issue requested by the client. Jones v. Barnes, 463 U.S. 745, 751 (1983).  Often, appellate counsel may properly omit issues if counsel reasonably foresees little or no likelihood of success on that issue. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); Knowles v. Mirzayance, 556 U.S. 111, 127 (2009) ("Counsel also not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether."). The "weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller, 882, F.2d at 1434. See also Jones, 463 U.S. at 751 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most on a few key issues.").  Because the claims raised in petitioner's current habeas petition are without merit, appellate counsel's decision not to raise them on appeal cannot fall outside the bounds of reasonably competent professional assistance. For the same reasons that the claims are without merit, petitioner also cannot demonstrate that counsel's decision not to raise them on appeal caused him to suffer any prejudice.  The state Supreme Court accordingly was reasonable in its determination that petitioner failed to articulate a prima facie claim of ineffective assistance by appellate counsel.

*Interpreters*

Petitioner alleges that he received ineffective assistance from the court's interpreters because: (1) two could not translate in a "coherent manner," and (2) the translators were switched throughout the trial.  As discussed above, petitioner has no clearly established independent constitutional right to an interpreter.  His allegations accordingly do not present a colorable constitutional claim. Cf. Strickland, 466 U.S. at 685-86 (constitutional right to counsel

1   is right to effective assistance of counsel because Constitution "envisions counsel's playing a

2   role that is critical to the ability of the adversarial system to produce just results.").

3          Moreover, petitioner has not provided the court with sufficient detail regarding

4   the interpreters' alleged ineffectiveness.  For example, petitioner repeatedly misstates the

5   number of interpreters who assisted him, and also fails to name which two (of the four) failed to

6   provide competent translations.  Cf. Chacon, 36 F.3d at 1464-65 (interpreter affirmatively

7   misrepresented counsel's advice to client, resulting in ineffective assistance of counsel).  Given

8   the record before it, the state Supreme Court did not unreasonably deny the claim.

9          **CLAIM FOUR: Cumulative Errors, or "Miscarriage of Justice"**

10         Petitioner alleges that the cumulative effect of the constitutional errors raised in

11  his petition deprived petitioner of his right to a fair trial.  ECF No. 1 at 20-21.  He also appears to

12  claim that the errors indicate judicial bias, presumably by the trial judge.  Id.

13             *Governing Authority*

14         The Supreme Court has clearly established that the combined effect of multiple

15  court errors violates due process where it renders the resulting criminal trial fundamentally

16  unfair.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410

17  U.S. 284, 298 (1973)).  The cumulative effect of multiple errors can violate due process even

18  where no single error rises to the level of a constitutional violation or would independently

19  require reversal.  Id., citing Chambers, 410 U.S. at 290, n. 3.

20             *Analysis*

21         In this case, the state courts have reasonably determined that all of petitioner's

22  allegations of error either lack merit or do not state a prima facie claim for relief.  In other words,

23  the trial court did not err on any of the grounds raised by petitioner.  Accordingly, there cannot

24  be any cumulative effect as described in Chambers or Parle.  See Rupe v. Wood, 93 F.3d 1434,

25  1445 (9th Cir. 1996) (no reason to reverse for cumulative error where no violation of federal

26  rights occurred at trial).

Petitioner's vague allegation that the trial judge was biased against him, presumably as demonstrated by the errors described in his petition, is not colorable.  To succeed on a judicial bias claim, a prisoner must overcome a presumption of honesty and integrity in those serving as adjudicators.  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  Bias can almost never be demonstrated solely on the basis of a judicial ruling.  Liteky v. United States, 510 U.S. 540, 555 (1994).  Petitioner has alleged no examples of behavior by the trial judge that would tend to show "such a high degree of favoritism or antagonism as to make fair judgment impossible."  Id.  To the extent petitioner presented a free-standing judicial bias claim to the state court, its summary denial was therefore entirely reasonable.

**CONCLUSION**

For the reasons outlined above, the undersigned recommends that the court deny the petition.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     The petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (ECF No. 1), be denied; and

2.     The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight (28) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1  shall be served and filed within twenty-eight (28) days after service of the objections.  The

2  parties are advised that failure to file objections within the specified time may waive the right to

3  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: March 26, 2013.

5

6  _____
   ALLISON CLAIRE
7  UNITED STATES MAGISTRATE JUDGE

8

9
   AC:rb
10 raki0715.fr

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

25